## GEORGE STARKS v. THE STATE.

### No. 1574. Decided October 20, 1897.

**1. Breaking into Jail to Aid Escape of a Prisoner—Indictment.**

See an indictment, held sufficient, for breaking into a jail for the purpose of effecting the escape of a person therein confined.

**2. Evidence—Proof of an Ordinance Incorporating a City Under the General Law.**

An ordinance of the incorporation of a city under the general incorporation law, may be legally proved by a book which was entitled, "Revised Code of Ordinances of the city of Mc., printed and published by authority of the city council," etc., and which is approved by the signature of the mayor and attested by the city clerk of the city of Mc. A book which shows that it was printed and published by authority of the city council of any city should be admitted and received in evidence as proof of all the acts and ordinances therein contained. Rev. Stats., arts. 558, 2304.

**3. Breaking into Jail to Aid in Escape of a Prisoner—Construction of Penal Code, Article 227.**

Under provision of article 227, Penal Code, for breaking into jail to aid in the escape of a prisoner therein confined, it is an offense to break into jail for said purpose, regardless of whether the prisoner whose escape or rescue was intended was legally or illegally confined therein. The object of the statute is the protection of the jails of the State. The gravamen of the offense is the breaking into the jail. If the prisoner is confined in jail, no person is authorized to break the same for the purpose of rescuing him. It is immaterial whether his arrest was with or without a writ or with or without a complaint against him.

**4. Same—Meaning of the Word "Jail."**

While the statute (article 277) uses the general term "jail," it is intended as well to protect the calaboose or city jail as the county jail.

**5. Charge—Principals.**

A charge of court with regard to principals which required the jury to believe before they were authorized to convict, that defendant was present and acted as principal in the breaking of the jail, was amply sufficient where the evidence positively identified the defendant as being there and tampering with the lock of the jail.

APPEAL from the District Court of Collin. Tried below before Hon. J. E. DILLARD.

Appeal from a conviction for breaking into the city jail or calaboose for the purpose of effecting the escape of a prisoner; penalty assessed, two years imprisonment in the penitentiary.

The charging part of the indictment is as follows, viz: "That George Starks, on or about the 18th day of July, one thousand and eight hundred and ninety-four, and anterior to the presentment of this indictment, in the county of Collin, State of Texas, did then and there unlawfully, willfully, and by force break into the jail of the city of McKinney, to wit, the calaboose of said city, for the purpose of effecting the rescue and escape therefrom of Tom Finley, who was a prisoner then and there lawfully confined in said jail, against the peace and dignity of the State."

A motion to quash the indictment was based upon the following grounds, viz:

"The indictment does not show by what means the city of McKinney was the owner of a jail or calaboose.

"It is not charged that the city of McKinney was incorporated as such, and that it could have a jail or calaboose, or that it in any way or manner had any authority to imprison Tom Finley or anyone else.

"It is not shown upon what charge Tom Finley was confined in the calaboose, nor in what court it was pending, nor how he became lawfully confined. Nor is it shown that he was arrested and confined by any officer, nor upon any warrant, nor without a warrant; and defendant is not put upon notice by the indictment of the facts which the State expects to prove to show that Finley was lawfully confined in said calaboose."

As made by the evidence introduced by the State, the case may be succinctly stated as follows, viz: On the evening of the 18th of July, 1894, George Starks, the defendant, and Tom Finley, the latter being drunk, were in a buggy driving in a gallop or run along one of the streets of the city of McKinney, and either did run over or came near running over a boy who was riding a jack in the street. The city marshal, who saw the occurrence, ran out, grabbed the horse by his bridle, arrested the parties, carried them to the city calaboose, and put Tom Finley therein and locked him up. This was done without any writ or warrant for his arrest and before any complaint was filed against Finley. In fact, the officer did not take him before the recorder or any other magistrate before confining him in the calaboose; and no complaint was filed by the officer until the next morning, when he filed a complaint charging Finley with immoderate driving. In the meantime, during the night, after Finley was placed in the calaboose, it was broken open, and Finley and another party therein confined had escaped. The officers searched for George Starks, this defendant, and he was found about two months thereafter in the Indian Territory.

Several parties were seen in and about the calaboose during the night, and defendant George Starks was positively identified as one of them and as the party who was working upon and endeavoring to break the lock upon the door of the calaboose.

During the trial, the State introduced the ordinances of the city of McKinney as contained in a book printed by authority of the city council, signed by the mayor, and authenticated by the city secretary. The following ordinances, among others, were read in evidence:

Ordinance No. 33 made it an offense for any person to drive a horse immoderately on the public streets.

Ordinance No. 73, section 3, of the city of McKinney reads as follows: "The marshal shall arrest any and every person within the corporate limits who shall in his presence violate any law or ordinance of said corporation and forthwith bring the offender or offenders before the recorder for trial, or report them immediately to the recorder and have writ or writs issued for his or their arrest. He shall also report to the recorder upon information the names of all offenders for the issuance of any proper writ, and on his failure to comply with the requirements of this section he shall be fined in a sum not less than one nor more than ten dollars, to be assessed by the recorder upon receiving satisfactory evidence thereof."

Section 4 of ordinance No. 73 is as follows: "It shall further be the duty of the marshal, in all arrests made by him between the hours of 5 o'clock p. m. and 6 o'clock a. m., or on Sunday, to cause all persons so arrested to enter into a bond prescribed by ordinance No. 62 to appear before the recorder's court in the city of McKinney at the earliest time possible that said person so arrested could be tried, unless it is desired by the recorder to have said person tried at some other hour. Said bond shall be taken by the marshal or his deputy."

Ordinance No. 62 is as follows: "Mayor's or recorder's court shall be governed by the same laws of the State of Texas with regard to the taking and forfeiture of bail bonds as are prescribed for the courts of the justice of the peace, and every provision of such laws with respect to the justices of the peace with regard to the taking and forfeiture of bail bonds shall apply to the mayor or recorder of the city, provided that such bail bonds shall be payable to the city of McKinney."

As to these ordinances, the court, in effect, charged the jury, "That the records in evidence show that the city of McKinney is incorporated under the general laws of Texas, and that the ordinances offered in evidence were valid legal ordinances, and were in force during the year 1894, in the city of McKinney."

Defendant's requested instructions, which were refused by the court, were as follows:

"4. If you find and believe from the evidence that Sam Burks, the city marshal, arrested Tom Finley for immoderate driving on the public streets of the city of McKinney, without a warrant, and that said marshal forthwith confined Finley in the calaboose of said city without taking him before the recorder, then such confinement was illegal, and in such case the defendant could not be guilty, and if you so believe, you will acquit the defendant."

"7. The second section of ordinance No. 73 gives the marshal authority to arrest any person who violates any law in his presence, and this may be done without warrant; but in case of such arrest it is the duty of the marshal to forthwith bring such offenders before the recorder for trial, or report them immediately to the recorder and have a writ issued for the arrest of the offender. You are instructed that if Tom Finley was arrested by Sam Burks, and he was not forthwith carried before the recorder for trial, and a warrant of arrest was not immediately issued for arrest of Tom Finley, then the confinement of Tom Finley was without authority of law, and if you find Tom Finley was not confined by legal authority, you will find defendant not guilty."

*Abernathy & Beverly,* for appellant.—1. The court erred in overruling defendant's motion to quash the indictment. Wills. Crim. Stats., art. 212, 213; Vaughan v. State, 9 Texas Crim. App., 564.

The verdict is against the evidence, in this: The ordinance of the city of McKinney made it the duty of the marshal, when he arrested Tom Finley on the charge of immoderate driving, without a warrant, to forthwith take him before the recorder for trial or for bond. This he failed to do.

The court erred in refusing special charges requested by defendant.

The marshal has no authority to arrest without a warrant when an offense is committed in his presence, unless the offense is one classed as a felony, or as an "offense against the public peace." Willson's Crim. Stats.; Code Crim. Proc., art. 226.

2. Those classed as "offenses against the public peace" are as follows: Unlawful assemblies, riots, affrays and disturbance of the peace, unlawfully carrying arms. Rev. Stats. 1879, Penal Code, arts. 279-323; Willson's Crim. Stats., arts. 279-323; Rev. Stats. 1895, Penal Code, arts. 299-343.

3. The ordinance could not authorize an arrest without warrant except in the instances and for the offenses authorized by the statutes of the State. Immoderate driving, for which Tom Finley was arrested and confined, is not classed as "an offense against the public peace" by the statute.

4. In all arrests without warrant it is the duty of the officer making the arrest to immediately take the person arrested before the magistrate who may have ordered the arrest, or before the nearest magistrate where the arrest was made. Without an order in such case the officer can not under any circumstances take bond without first taking the person arrested before a magistrate. Wills. Crim. Stats., Code Crim. Proc., art. 231; Short v. State, 16 Texas Crim. App., 44; Staples v. State, 14 Texas Crim. App., 138.

5. Municipal authorities have a right to establish rules authorizing the arrest without warrant of persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony or breach of the peace; or threaten or are about to

commit some offense against the laws. No such rule was shown to have been established; and if it had been, Tom Finley was not shown to be within the rule. Wills. Crim. Stats., Code Crim. Proc., art. 228.

The court erred in that part of the charge given to the jury wherein they are told that the records in evidence show that the city of McKinney is incorporated under the general laws of Texas, and that the ordinances offered in evidence were valid legal ordinances, and were in force during the year 1894 in the city of McKinney; because such charge is on the weight of the evidence, and the evidence adduced does not justify such a charge, and there was no evidence showing that such ordinances had ever been legally passed or published, and the pamphlet in evidence was not proven by any witness to be the ordinances of the city of McKinney, and they could not themselves prove them to be such ordinances.

We call special attention to the ordinance No. 73, sections 3 and 4, and ask the court to construe the same and say whether or not it was the duty of the marshal to take Tom Finley immediately before the recorder before putting him in jail, and what effect, if any, the failure to take Finley before the recorder would have upon the legality of the imprisonment. This is the most vital point in the case, and if our position is correct special charges number 4 and number 7 on this point should have been given, and under the evidence defendant should have been acquitted. In view of the fact that there have been two trials of this case in the district court, we specially ask the court to decide this point, even if you may reverse the case on other grounds.

*Mann Trice,* Assistant Attorney-General, for the State.—1. Not one of the objections urged against the indictment in the motion to quash is well taken. The indictment conforms to Willson's Criminal Forms, No. 138, which has been approved by this court. Williams v. State, 24 Texas Crim. App., 17; Loggins v. State, 32 Texas Crim. Rep., 358.

Jail breaking is a substantive offense, and is in no wise affected either by the guilt or innocence of the party confined to effect whose escape the breaking was done, or by the legality of the process under which the party is confined. Peeler v. State, 3 Texas Crim. App., 533.

It was no more necessary to charge that the town was incorporated and entitled to have a calaboose or jail, than it would be to charge a county to be organized and entitled to have a jail.

2. The second error assigned is without merit. The ordinance relied upon, while it would bind the marshal to accept good bond if tendered, under the circumstances of the arrest of the succored prisoner, would not compel him to provide bail for such prisoner, or upon the failure of the prisoner to give bond, with the opportunity afforded him, as was done in this case, render the imprisonment illegal. Beyond this, however, the offense charged against this appellant being a substantive one, is not affected by the legality of the arrest and confinement of the succored prisoner. Authorities, ante.

3. The pamphlet containing the ordinances of the city of McKinney, "published by authority of the city council of the city of McKinney," was properly admitted to prove said ordinances.

4. The special charges requested, having no support in the evidence, were properly refused. Independent of the fact that the legality of the arrest of the succored party can not affect the charge against the appellant, the arrest was legal, the offense being committed in the view of the officer; and on Sunday evening, conforming to the ordinance, the officer offered to release on bail, which the prisoner attempted and failed to make. "The word or term jail means any place of confinement used for detaining a person by the city marshal," conforms substantially to the statutory definition of "jail." Rev. Stats., art. 242. That "the ordinances offered in evidence were in force in the year 1894," is not a charge upon the weight of the evidence.

The proof shows that the prisoner was rescued from jail by the breaking of the jail lock, and that of the persons discussing the purpose to liberate the prisoner the appellant was seen striving at the lock with a stick, and that immediately after the rescue the prisoner was in his company.

HENDERSON, JUDGE.—Appellant was convicted of breaking into a jail for the purpose of effecting the escape of a prisoner therein confined, and his punishment assessed at imprisonment in the penitentiary for a term of two years; hence this appeal.

The motion to quash the indictment was not well taken. The case cited by counsel of Vaughan v. State, 9 Texas Criminal Appeals, 564, is not in point. That indictment was under a different statute, to wit, article 228, Penal Code 1895, which is for willfully aiding in the escape of a prisoner in the custody of an officer, by whom he is legally held in custody on an accusation of felony, etc. This prosecution is under article 227, the construction of which will be considered hereafter. It is sufficient here to say that the indictment was sufficient. See Williams v. State, 24 Texas Crim. App., 17.

The court acted properly in admitting the testimony showing that the city of McKinney had incorporated under the general act; that is, that city had accepted the provisions of the general act of the Legislature relating to cities and towns and had incorporated in accordance with article 381 (formerly article 340) of the Revised Civil Statutes of 1895. This ordinance of incorporation was shown by its publication in a book of ordinances. Said ordinance showed the acceptance of said Act of March 15, 1875, in lieu of an existing charter of the said city of McKinney, by a unanimous vote of the board of aldermen, and is attested by the then secretary, John S. Heard, and the mayor, George W. Bentley; and it also shows to have been filed and recorded in the office of the clerk of the County Court of Collin County. See Rev. Stats. 1895, art. 381. The ordinance in question and all the other ordinances offered in evidence were shown from a book on the back of which was printed, "Revised Code of Ordinances of the City of McKinney, Printed and Published by the

Authority of the City Council, September, 1891;" and at the end thereof is the signature of approval by the mayor and attestation by the secretary of the city of McKinney. This was in accordance with article 558, Revised Statutes 1895, which reads as follows: "All ordinances of the city, where furnished and published by authority of the city council, shall be admitted and received in all courts and places without further proof." This article seems to be in consonance with article 2304, Id., relating to the introduction in evidence of the printed statute books of this State; said article authorizing the use of such books, when they appear to be printed by authority of the State, to be used as evidence of the acts therein contained; and we hold that a book which shows that it was printed and published by authority of the city council of any city should be admitted and received in evidence as proof of all the acts and ordinances therein contained.

Appellant excepted to the court's charge, and also asked a number of special instructions, which the court refused to give, and reserved his bill of exceptions thereto. These bills show that appellant insisted in the court below that it was incumbent on the State to show that he (appellant) was legally confined in said jail, and that if it failed in this respect the prosecution must fail. In other words, he insisted that the onus was on the State to show a legal arrest for some offense charged against the city ordinances of McKinney, and a legal detention on account of such offense.

We do not understand such to be a proper construction of article 227, Penal Code 1895, under which this prosecution was instituted. Said article is as follows: "If any person shall break into any jail for the purpose of effecting the rescue or escape of a prisoner therein confined, or for the purpose of aiding in the escape of any prisoner so confined, he shall be punished by imprisonment in the penitentiary for a term of not less than two nor more than six years."

It will be noticed that nothing is said in this article making it an offense for a person to aid in the escape of a prisoner legally or lawfully confined in jail. In the succeeding article (article 228) the word "legally" is used, and it is only an offense when a person willfully aids in the escape of a prisoner in the custody of an officer by whom he is legally held, etc. The omission of the word "legally" in connection with the person confined in jail, when viewed in connection with said succeeding article and other articles of the Code, is an aider in the construction of said article, and shows that its omission by the Legislature was with a purpose. However, we need no extraneous support for a proper construction of this article. It is plain in its terms, and it authorizes a conviction of any person who shall break into jail for the purpose of effecting the rescue or escape of a prisoner therein confined; that is, of any prisoner therein confined, regardless of whether his arrest was legal or illegal. If he is a prisoner, and confined in jail, no person is authorized to break into jail for the purpose of rescuing him. The object of the statute appears to be the protection of the jails of the country against being

broken into in order to effect the escape or rescue of the persons therein confined, irrespective of the legality or illegality of their detention. No doubt, the lawmakers, having in mind that the courts were always open to those who were unlawfully imprisoned or confined in jail, and desiring to preserve the integrity of our jails for the safe-keeping of all prisoners, as well as to enforce respect for law, enacted this statute, making it a penal offense for breaking into any jail to effect the rescue or escape of a prisoner, the gravamen of the offense being the breaking into the jail. We accordingly hold that it was unnecessary on the part of the court to charge as he did with reference to the authority of the city marshal to make the arrest of Tom Finley, and his authority to detain him as a prisoner. If the proof showed that Burks was city marshal of McKinney, and that as such he arrested Tom Finley on account of a real or presumed offense against the city of McKinney, this was all that was necessary; and it is immaterial whether he arrested him with or without a writ, or with or without a complaint having previously been made against him, or if he arrested him for an assumed offense, which occurred in his presence, but failed to take him forthwith before the mayor or recorder, and make complaint against him. For an illegal arrest the marshal might be amenable in a civil or criminal action, but the illegality of the arrest would not justify or authorize any person or number of persons to interfere after the prisoner had been lodged in jail, and rescue such prisoner by an assault upon the jail and breaking into the same.

What we have said above with reference to the court's charge disposes of the special charges asked by appellant. They did not present a ground of defense to the charge in this case. We further hold in this connection that, while the statute uses the general term "jail," it has reference to and is intended as well to protect the calaboose or city jail as the county jail. The statute is broad in expression, and is intended to inhibit the breaking into any jail for the purpose of effecting the rescue or escape of a prisoner therein confined. See White's Penal Code, art. 242, and Welch v. State, 25 Texas Crim. App., 580.

In our opinion, the charge of the court on principals was sufficiently comprehensive. After defining who were principals, it required the jury to believe that appellant was present at the time said jail was broken into, and acted as a principal in said breaking. There was nothing in the evidence that called for any special charge on the subject. There was no positive testimony indicating even that others were present when the jail was broken into and the prisoner rescued; yet defendant is the only person who was positively identified by any of the witnesses as being there and tampering with the lock of the jail; and the evidence forcibly suggested that, no matter who else was there at the time, he was present. The charge on circumstantial evidence was sufficient.

We have examined the record carefully, and in our view the evidence authorized the conviction. The judgment is accordingly affirmed.

*Affirmed.*